# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

SECOND DISTRICT—DECEMBER TERM, 1892.

## Joseph Spear v. William H. Bull.

1. *Real Estate Broker—Who is Within the Meaning of—An Ordinance Requiring a License.*—B. resided at Rock Falls, and was engaged there in the real estate business. In the fall of 1890 he was occupied much of his time in Chicago, making his headquarters at the office of S. B., real estate brokers. He was interested with them in real estate deals in Indiana and elsewhere. He had no sign, desk or letter head showing that he was engaged in the real estate business in Chicago. It was held that the mere fact that he was interested with S. B. in deals concerning Chicago real estate and made frequent trips to Indiana at their instance, etc., would not make him a real estate broker of Chicago, within the meaning of the ordinance.

**Memorandum.**—Action of assumpsit. Appeal from the Circuit Court of Whiteside County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the December term, 1892, and affirmed. Opinion filed May 25, 1893.

The statement of facts is contained in the opinion of the court.

C. L. SHELDON, attorney for appellant.

JARVIS DINSMOOR, attorney for appellee.

OPINION OF THE COURT, HARKER, J.
This was an action of assumpsit by appellee to recover

(348)

commissions as a real estate agent for services rendered in exchanging a farm in Whiteside County, belonging to appellant, for certain real estate in Chicago.

In addition to the general issue Spear filed a special plea setting up that at the time of Bull's employment and services as claimed, he was a real estate broker in the city of Chicago, doing business as such without a license, contrary to the ordinance of said city, and consequently not entitled to recover therefor.

Upon the trial there was a sharp contest upon two questions:

First. Whether Spear employed Bull to negotiate the trade.

Second. Whether at the time of the alleged employment and the rendering of the services Bull was a Chicago real estate broker within the meaning of the ordinances pleaded.

It is not controverted that Bull rendered active and valuable services in bringing about the trade, but Spear claimed that it was not by any employment on his part that they were rendered, but that he was employed by Tabor, the owner of the Chicago property, and that they were rendered as the agent of Tabor.

Upon the subject of employment there is a direct contradiction between the parties. The circumstances, however, corroborate Bull. We are not only satisfied from the evidence in the record that there was an employment, but that Spear so understood it at the time the negotiations were being carried on.

The evidence shows that both parties to this controversy reside at Rock Falls, Whiteside County; that Bull has resided there since 1880, and has been engaged there in the real estate business for a large portion of the time. In the fall of 1890, he was occupied much of his time in Chicago, making his headquarters at the office of Scott Bros., real estate brokers, at 97 Washington street. He seems to have been interested with them in deals for real estate in Indiana and elsewhere. It does not appear, however, that he had any sign, desk, card or letter head indicating that he was

engaged in that business in Chicago. Pending the negotiations for the Tabor property, his place of business was at Rock Falls. The mere 'fact that he was interested with the Scott Bros. in deals concerning Chicago real estate, that he made frequent trips to Indiana at their instance, and made their office his headquarters while they were putting trades through, would not make him a real estate broker of Chicago, within the meaning of the ordinance.

We do not think the damages awarded were excessive. According to the terms of the trade, the farm was taken at $35,000. Computing the two per cent commission which the evidence shows is reasonable and customary, appellee would be entitled to $700. As the farm was taken subject to a $7,000 mortgage, which Spear had placed upon it, it is quite clear the jury did not allow commission on more than the difference between the $35,000 and $7,000.

We do not think appellant was prejudiced by the improper testimony heard by the jury and excluded by the court on motion of appellant's counsel. There are instances in which the hearing of improper evidence by the jury may work great harm to the litigant, notwithstanding the evidence be excluded by the court, but we can not see that this record furnishes one of them.

While some of the instructions are in a slight degree confusing and are open to criticism, for that 'reason we do not regard them so erroneous as to warrant us in reversing the judgment.

We feel that substantial justice has been done and that another trial would not result differently. Judgment affirmed.